# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STANLEY LEO SPRIGGS, | : | Civil No. 1:23-CV-01756 |
| Plaintiff, | : | |
| v. | : | |
| B. SALAMON, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is Defendants' motion to partially dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 22.) This action was filed pursuant to 42 U.S.C. § 1983 and raises state and federal constitutional claims based on a theory of failure to protect Plaintiff from a risk of harm resulting from his bottom bunk status not being in the Department of Corrections computer system. For the following reasons, the court will grant the motion and dismiss all claims against Defendant Haldeman and any Eighth Amendment failure to protect claim based on the top bunk status after the November 8, 2021 fall. Additionally, under the court's inherent power to screen prisoner complaints pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A, the court will dismiss all claims under the Pennsylvania Constitution.

1

## PROCEDURAL HISTORY

Stanley Leo Spriggs, ("Plaintiff"), an inmate currently housed at the State Correctional Institution Rockview in Bellefonte, Pennsylvania ("SCI-Rockview"), initiated this action by filing a complaint under 42 U.S.C. § 1983 in October of 2023. (Doc. 1.) The complaint named eight defendants: (1) B. Salamon ("Salamon"), Facility Manager; (2) Keri Moore ("Moore"), Chief Grievance officer; (3) Nicki Paul ("Paul"), Grievance Coordinator; (4) Major H. Haldeman ("Haldeman"); (5) Pasqualle, Unit Manager of CA Block; (6) Sgt. Bush ("Bush"); (7) Correctional Officer Bollinger ("Bollinger"); and (8) Department of Corrections Head of Medical Department. (Doc. 1, p. 2.)[1] Plaintiff alleged that on November 4, 2021, he was released from the restricted housing unit ("RHU") and moved to C-A unit. (*Id*., p. 6.) Defendant Bush told him to go to cell 118 and "he made the guy in the cell give me bottom bunk due [to] my status and I'm elderly." (*Id*.) He then alleged that on November 5, 2021, his cellmate was sent to medical, and when the cellmate returned to the unit, Plaintiff was told to move to the top bunk. (*Id*.) Plaintiff alleged that he "had medical clear me at intake in 2017 [at] SCI-Camp Hill for numerous injuries to my spinal column as bottom bunk-bottom tier." (*Id*.) Plaintiff alleged that he confronted Defendant Bush on multiple occasions. (*Id*.) He also stated that the told Defendant Bollinger on November 6

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

and 7, 2021. (*Id.*) He alleged that he spoke with the "Unit Manager" about "needing medical to fix the problem [and] he told me 'no.'" (*Id.*) Plaintiff alleged that the following occurred on the morning of November 8, 2021:

> I was trying to get my legs moving and suffer diabetes as well, which caused my feed to be numb, however trying to come to the ladder I fell [approximately] 4 feet landing on my back. I could not get up and had to be put on a stretcher and taken to medical. Once there they admitted me for x[-]rays and Dr. Preston called the unit to make sure they had a bottom bunk bottom tier cell for me, which they said they did but when I got there [they] made me go into cell 118 again on the top bunk. Meanwhile[,] from the 4th to 9th of November they had a bottom bunk bed in 103 cell the whole time . . .

(*Id.*) Plaintiff alleged that he continues to suffer back pain. (*Id.*) Based on these facts, Plaintiff raised claims under the Eighth Amendment. (*Id.*, p. 7.)

The court screened the complaint under 28 U.S.C. § 1915(e)(2)(B)(ii) on December 4, 2023, and dismissed all claims against Defendants Salamon, Moore, Paul, Haldeman, and the Department of Corrections Head of Medical Department without prejudice for a lack of personal involvement. (Doc. 11.) The court granted Plaintiff the opportunity to amend his complaint to cure the defect. (*Id.*)

The court received and docketed an amended complaint on February 1, 2024. (Doc. 16.) The amended complaint names Haldeman, Bush, Pasquale, and Bollinger as defendants. (*Id.*) Plaintiff provides the following alleged facts:

> Sgt. Bush failed to protect me from harm and neglected to make moves to safely accommodate my housing, by putting me back in to cell [1]18 after I fell out of the top bunk knowingly setting me up for further injuries because the only bunk available to me was again top bunk. C/O

3

> Bush put me in direct harm/danger on the 5th thru 8th by forcing me to sleep on the top bunk knowingly [and] neglecting the fact that I am elderly [and] have admitted to them (staff – Bush [and] Bollinger [and] Pasquale) my health issues. My fall from the top bunk on 11-8-21 could've been avoided if staff would've properly looked into more than what the computer said [and] talked to medical personally which is always an available option. Unit Manager Pasquale was asked by myself after suffering a couple days in pains to be sent to medical [and] he denied me and he knew of my medical condition as I informed him yet he failed to protect me from the life endangering harm. Major Haldeman as a supervisor investigated the cause for my grievance however she denied me relief if even in partiality due to my proven status caused harms and failed to adhere to the D.O.C. code of ethics Sect. (B)(1). Sgt. Bush, Unit Manager Pasquale [and] Major Haldeman all have supervisory titles and all directed, encouraged, tolerated [and] acquiesced in the conduct of placing my person in harm by ordering me to a top bunk and/or through the denial of relief after careful review of records showed the harm could've been deterred. I still suffer from the harm and the response was against policy. I have right to protection and Dr. Preston called staff during my visit from falling out of the bed and told them they never should've had me in that bed. The doctor recommended they open a bed on bottom for me and none of the supervisors made the correction. They only continued the discriminatory behavior to punish me [and] further my pain [and] suffering.

(*Id*., pp. 5–6.) Based on this allegations, Plaintiff raises an Eighth Amendment failure to protect claim under both the United States and Pennsylvania Constitutions. (*Id*., p. 7.) He also raises a supervisory liability claim based on his top bunk placement. (*Id*.) In doing so, Plaintiff states that "I [was] forced to top bunk after I fell out of one again or sleep on floor to prevent the harm." (*Id*.) As relief, Plaintiff seeks "compensatory [and] punitive damages in the amount of $200,000.00 for the injury and pain [and] suffering." (*Id*.)

4

On April 5, 2024, Defendants filed a motion to partially dismiss the amended complaint for failure to state a claim upon which relief can be granted. (Doc. 22.)  Specifically, Defendants argue that all claims should be dismissed against Defendant Haldeman for failure to allege personal involvement and all Eighth Amendment claims based on a requirement to sleep on the top bunk after the fall should be dismissed because Plaintiff admits that he did not physically return to the top bunk, but slept on the floor.  (Doc. 23.)  Plaintiff filed a brief in opposition that conceded that Defendant Haldeman should be dismissed as a defendant for lack of personal involvement, but challenged the dismissal of the post-fall Eighth Amendment claims.  (Docs. 26, 26-1.)  Defendants filed a reply on June 7, 2024.  (Doc. 27.)  The motion to dismiss is now ripe for the court's consideration.

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.  Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at SCI-Rockview, in Centre County, Pennsylvania, which is located within this district.  *See* 28 U.S.C. § 118(b).

**MOTION TO DISMISS STANDARD**

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of*

*Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015), as amended (Mar. 24, 2015).  Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile.  *See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir. 2014); *see also Phillips*, 515 F.3d at 245.  A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

**DISCUSSION**

**A. All Claims Against Defendant Haldeman Will Be Dismissed.**

Defendants seeks a dismissal of all claims against Defendant Haldeman premised on a lack of personal involvement. (Doc. 23, pp. 3–4.) Plaintiff concedes to such dismissal.

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). It is also well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007).

The alleged facts include a reference to Defendant Haldeman, stating that "Major Haldeman as a supervisor investigated the cause for my grievance however she denied me relief if even in partiality due to my proven status caused harms and failed to adhere to the D.O.C. code of ethics Sect. (B)(1)." (Doc. 16, p. 5.) This is insufficient to support a § 1983 claim. "Participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement." *Rode v.*

*Dellarciprete,* 845 F.2d 1195, 1208 (3d Cir. 1988) (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); *see also Brooks v. Beard*, No. 05-3196, 2006 WL 332547, 167 F. App'x 923, 925 (3d Cir. Feb. 14, 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct).

In his responsive briefing, Plaintiff concedes to Defendant Haldeman's lack of personal involvement and the dismissal of all claims raised against her. (Doc. 26-1.) Therefore, the court will grant Defendants' motion on this issue and dismiss all claims against Defendant Haldeman with prejudice.

### B. The Eighth Amendment Claims After the Fall Will Be Dismissed.

Defendants argue that any Eighth Amendment claim based on the continued top bunk status following the November 8, 2021 fall must be dismissed because Plaintiff conceded that he did not return to the top bunk, but slept on the floor. (Doc. 23, pp. 4–6.)

"A prison official's 'deliberate indifference' to a substantial risk of harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The Supreme Court has found that an Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged

9

must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." *Id.* Furthermore, in cases involving prison safety or prison conditions, the relevant state of mind "is one of 'deliberate indifference' to inmate health or safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 130 (3d Cir. 2001). This deliberate indifference standard "is a subjective standard under *Farmer*-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Id.* Thus, "[d]eliberate indifference can be shown when a prison official *knows of and disregards* an excessive risk to inmate health or safety." *Hamilton v. Leavy,* 117 F.3d 742, 747 (3d Cir. 1997) (emphasis added).

Plaintiff alleges that he fell from the top bunk on November 8, 2021. (Doc. 16, p. 5.) He also alleges that prior to and following the fall, he was given bottom bunk status based on his medical condition. (*Id.*) Attached to the amended complaint is a November 23, 2021 grievance filed by Plaintiff stating that following the fall and the return to his cell, "I was given a used mattress that was ripped in the middle and on the side with missing foam. That night I slept on the floor." (Doc. 16-1, p. 2.) In appealing the grievance, Plaintiff states that the following day he was moved to a different cell. (Doc. 16-1, p. 3.) Therefore, according to the amended complaint and the attached documents, Plaintiff did not

sleep on the top bunk following the return to his cell after the November 8, 2021 fall.

In support of their assertion that the post-fall top bunk assignment did not violate the Eighth Amendment, Defendants cite to cases from the United States District Courts for the District of South Carolina, Northern District of Georgia, and District of Utah, arguing:

> But courts routinely dismiss Eighth Amendment claims based on allegedly unsafe top-bunk placements where plaintiff had the option to sleep on the floor. *See, e.g.*, *Sayles v. Anderson*, 2010 WL 234909, *3 (D.S.C. Jan. 19, 2010) (dismissing Eighth Amendment claim based on allegedly unsafe top-bunk placement because plaintiff had the option to "place his mattress on the floor and sleep there" and thus "was not forced to climb onto the top bunk if [he] felt that he could not do so safely"); *Howell v. White*, 2015 WL 13306132, at *4 (N.D. Ga. June 30, 2015) (dismissing Eighth Amendment claim based on allegedly unsafe top-bunk placement because, "rather than sleep on a mattress on the floor, [plaintiff] chose to sleep in a top bunk"); *Cardona v. Cook*, 2014 WL 119436, at *3 (D. Utah Jan. 13, 2014) (dismissing Eighth Amendment claim based on allegedly unsafe top-bunk placement because plaintiff was "permitted . . . to place his mattress on the floor as an alternative to sleeping in the top bunk").

(Doc. 23, p. 5.)

While the holdings of these courts are not binding, this court agrees generally with their outcomes and finds that because Defendants provided Plaintiff an alternative sleeping arraignment that kept him off the top bunk, Plaintiff is unable to prove that Defendants disregarded an excessive risk to his health and safety as required under *Hamilton*. Therefore, the court will grant Defendants'

motion and dismiss any Eighth Amendment claim stemming from the placement in cell 118 with top bunk status after the November 8, 2021 fall.

Defendants also that Plaintiff's amended complaint fails to state an Eighth Amendment claim for prison conditions associated with the requirement that he sleep on the floor for the night he returned to cell 118 after the November 8, 2021 fall.  (Doc. 26, p. 6.)  However, since no such claim is raised in the amended complaint, the court will not address it further.

### C. Plaintiff's Claims Under the Pennsylvania Constitution Will Be Dismissed.

In the amended complaint, Plaintiff raises his failure to protect claim under both the United States Constitution and the Pennsylvania Constitution.  (Doc. 1, p. 7.)  All the briefing in this matter is silent as to any claims raised under the Pennsylvania Constitution.  However, the court will exercise its inherent power to screen out actions that fail to state a claim on which relief may be granted and dismiss all claims raised under the Pennsylvania Constitution.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii)[2]; 28 U.S.C. § 1915A.

The Commonwealth of Pennsylvania has not recognized a private right of action for monetary damages based upon violations of its Constitution. See, e.g., *Hoffman v. Makhoul*, No. 1674 C.D. 2016, 2017 WL 1788348, at *3 (Pa. Commw.

---

[2] Plaintiff was granted *in forma pauperis* status on December 4, 2023.  (Doc. 11.)

May 5, 2017) (finding that the plaintiff had failed to plead a valid cause of action for a violation of Article I, Section 13 of the Pennsylvania Constitution because the courts of the Commonwealth "have not recognized any private right of action for money damages for violation of the Pennsylvania Constitution" (collecting cases)).

The United States Court of Appeals for the Third Circuit has observed the same, albeit in non-precedential opinions. *See, e.g., Schutzeus v. Pennsylvania Bd. of Prob. & Parole*, No. 20-2031, 2022 WL 58541, at *2 n.3 (3d Cir. Jan. 6, 2022) (unpublished) (stating that "Pennsylvania does not recognize a private right of action for damages for violations of its constitution (citation omitted)"); *Moss v. Pennsylvania*, 838 F. App'x 702, 708 (3d Cir. 2020) (unpublished) (stating that "Pennsylvania does not recognize a private right of action for damages in a lawsuit alleging a violation of the Pennsylvania Constitution" (citation omitted)); *Ibn-Sadiika v. Cnty. of Allegheny Dep't of Ct. Recs.*, 647 F. App'x 60, 62 (3d Cir. 2016) (unpublished) (finding that the plaintiff's claims for damages based upon alleged violations of the Pennsylvania Constitution failed as a matter of law because Pennsylvania has not authorized an award of monetary damages for such violations of its Constitution); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) (unpublished) (stating that "[n]o Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution").

Finally, federal district courts sitting in Pennsylvania have also observed that the Pennsylvania Constitution does not provide a private right of action for monetary damages. *See, e.g., Walker v. Wetzel*, No. 20-cv-01608, 2022 WL 433161, at *9 (M.D. Pa. Feb. 11, 2022) (stating that Pennsylvania has not recognized a private cause of action for damages under the Pennsylvania Constitution and, thus, the plaintiff's claim for damages based upon the defendants' alleged violations of the cruel and unusual punishment clause under Article I, § 13 of the Pennsylvania Constitution was subject to dismissal); *M.T. by & Through Eison v. Peterman*, No. 17-cv-01619, 2019 WL 461083, at *7 (W.D. Pa. Feb. 6, 2019) (concluding that the plaintiff's state constitutional claims for damages failed to state a claim because "Pennsylvania law does not recognize a private cause of action for damages under the Pennsylvania Constitution ..." (citations omitted)); *Kaucher v. Cnty. of Bucks*, No. 03-cv-01212, 2005 WL 283628, at *11 (E.D. Pa. Feb. 7, 2005), aff'd, 455 F.3d 418 (3d Cir. 2006) (explaining that "Pennsylvania has no statute similar to [Section] 1983, which provides the cause of action for damages due to a federal constitutional violation").

Here, Plaintiff is only seeking monetary relief in his amended complaint. (Doc. 1, p. 7.) Thus, in accordance with the above case law, the court finds that Plaintiff's claims under the Pennsylvania Constitution are subject to dismissal. In doing so, the court recognizes that while Plaintiff is precluded from recovering

14

monetary damages for violations of the Pennsylvania Constitution, he is not precluded from recovering other remedies. *See*, e.g., *Jones v. City of Philadelphia*, 890 A.2d 1188, 1216 (Pa. Commw. Jan. 25, 2006) (sating that "[o]ther remedies, such as declaratory or prospective injunctive relief" are available for a violation of Article I of the Pennsylvania Constitution); *Hughes v. Rush Twp. Police Dep't,* No. 1804 C.D. 2014, 2015 WL 5453321, at *2 (Pa. Commw. July 6, 2015) (stating that "[a] plaintiff can pursue declaratory or prospective injunctive relief under the Pennsylvania Constitution" (footnote and citation omitted)).  Therefore, the court will dismiss all claims for monetary relief under the Pennsylvania Constitution with prejudice, but such a dismissal will not prejudice Plaintiff from filing an amended pleading seeking non-monetary relief under the Pennsylvania Constitution.

## CONCLUSION

For the above stated reasons, the court will grant Defendants' motion for partial dismissal of the amended complaint. The court will dismiss Plaintiff's claim against Defendant Haldeman with prejudice, dismiss the Eighth Amendment failure to protect claim concerning the top bunk status in cell 118 after the November 8, 2021 fall with prejudice, and dismiss all claims for monetary relief under the Pennsylvania Constitution with prejudice.

An appropriate order follows.

s/Jennifer P. Wilson<br>
JENNIFER P. WILSON<br>
United States District Judge<br>
Middle District of Pennsylvania

Dated: December 27, 2024