IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STANLEY LEO SPRIGGS, | : | Civil No. 1:23-CV-01756 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| B. SALAMON, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is an unopposed motion for summary judgement filed by

Defendants.  Because Stanley Leo Spriggs ("Plaintiff") has not responded to this

motion despite Local Rules requiring a response and a court order substantially

extending the response deadline, the court will deem the motion unopposed.  Upon

review of the merits, the court will grant Defendants' motion, enter judgment in

Defendants' favor, and close the case.

### BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, an inmate currently housed at the State Correctional Institution

Rockview in Bellefonte, Pennsylvania ("SCI-Rockview"), initiated this action by

filing a complaint under 42 U.S.C. § 1983 in October of 2023.  (Doc. 1.)  The

complaint named eight defendants: (1) B. Salamon ("Salamon"), Facility Manager;

(2) Keri Moore ("Moore"), Chief Grievance officer; (3) Nicki Paul ("Paul"),

Grievance Coordinator; (4) Major H. Haldeman ("Haldeman"); (5) Pasqualle, Unit

1

Manager of CA Block; (6) Sgt. Bush ("Bush"); (7) Correctional Officer Bollinger

("Bollinger"); and (8) Department of Corrections Head of Medical Department.

(Doc. 1, p. 2.)[1]  Plaintiff alleged that on November 4, 2021, he was released from

the restricted housing unit ("RHU") and moved to C-A unit.  (*Id*., p. 6.)  Defendant

Bush told him to go to cell 118 and "he made the guy in the cell give me bottom

bunk due [to] my status and I'm elderly."  (*Id*.)  He then alleged that on November

5, 2021, his cellmate was sent to medical, and when the cellmate returned to the

unit, Plaintiff was told to move to the top bunk.  (*Id*.)  Plaintiff alleged that he "had

medical clear me at intake in 2017 [at] SCI-Camp Hill for numerous injuries to my

spinal column as bottom bunk-bottom tier."  (*Id*.)  Plaintiff alleged that he

confronted Defendant Bush on multiple occasions.  (*Id*.)  He also stated that the

told Defendant Bollinger on November 6 and 7, 2021.  (*Id*.)  He alleged that he

spoke with the "Unit Manager" about "needing medical to fix the problem [and] he

told me 'no.'"  (*Id*.)  Plaintiff alleged that the following occurred on the morning of

November 8, 2021:

> I was trying to get my legs moving and suffer diabetes as well, which
> caused my feet to be numb, however trying to come to the ladder I fell
> [approximately] 4 feet landing on my back. I could not get up and had
> to be put on a stretcher and taken to medical. Once there they admitted
> me for x[-]rays and Dr. Preston called the unit to make sure they had a
> bottom bunk bottom tier cell for me, which they said they did but when
> I got there [they] made me go into cell 118 again on the top bunk.

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

> Meanwhile[,] from the 4th to 9th of November they had a bottom bunk bed in 103 cell the whole time . . .

(*Id*.)  Plaintiff alleged that he continues to suffer back pain.  (*Id*.)  Based on these facts, Plaintiff raised claims under the Eighth Amendment.  (*Id*., p. 7.)

The court screened the complaint under 28 U.S.C. § 1915(e)(2)(B)(ii) on December 4, 2023, and dismissed all claims against Defendants Salamon, Moore, Paul, Haldeman, and the Department of Corrections Head of Medical Department without prejudice for a lack of personal involvement.  (Doc. 11.)  The court granted Plaintiff the opportunity to amend his complaint to cure the defect.  (*Id*.)

The court received and docketed an amended complaint on February 1, 2024.  (Doc. 16.)  The amended complaint names Haldeman, Bush, Pasquale, and Bollinger as defendants.  (*Id*.)  Plaintiff provides the following alleged facts:

> Sgt. Bush failed to protect me from harm and neglected to make moves to safely accommodate my housing, by putting me back in to cell [1]18 after I fell out of the top bunk knowingly setting me up for further injuries because the only bunk available to me was again top bunk.  C/O Bush put me in direct harm/danger on the 5th thru 8th by forcing me to sleep on the top bunk knowingly [and] neglecting the fact that I am elderly [and] have admitted to them (staff – Bush [and] Bollinger [and] Pasquale) my health issues.  My fall from the top bunk on 11-8-21 could've been avoided if staff would've properly looked into more than what the computer said [and] talked to medical personally which is always an available option.  Unit Manager Pasquale was asked by myself after suffering a couple days in pains to be sent to medical [and] he denied me and he knew of my medical condition as I informed him yet he failed to protect me from the life endangering harm.  Major Haldeman as a supervisor investigated the cause for my grievance however she denied me relief if even in partiality due to my proven status caused harms and failed to adhere to the D.O.C. code of ethics

> Sect. (B)(1). Sgt. Bush, Unit Manager Pasquale [and] Major Haldeman all have supervisory titles and all directed, encouraged, tolerated [and] acquiesced in the conduct of placing my person in harm by ordering me to a top bunk and/or through the denial of relief after careful review of records showed the harm could've been deterred. I still suffer from the harm and the response was against policy. I have right to protection and Dr. Preston called staff during my visit from falling out of the bed and told them they never should've had me in that bed. The doctor recommended they open a bed on bottom for me and none of the supervisors made the correction. They only continued the discriminatory behavior to punish me [and] further my pain [and] suffering.

(*Id.*, pp. 5–6.) Based on these allegations, Plaintiff raises an Eighth Amendment failure to protect claim under both the United States and Pennsylvania Constitutions. (*Id.*, p. 7.) He also raises a supervisory liability claim based on his top bunk placement. (*Id.*) In doing so, Plaintiff states that "I [was] forced to top bunk after I fell out of one again or sleep on floor to prevent the harm." (*Id.*) As relief, Plaintiff seeks "compensatory [and] punitive damages in the amount of $200,000.00 for the injury and pain [and] suffering." (*Id.*)

On April 5, 2024, Defendants filed a motion to partially dismiss the amended complaint for failure to state a claim upon which relief can be granted. (Doc. 22.) Specifically, Defendants argued that all claims should be dismissed against Defendant Haldeman for failure to allege personal involvement and all Eighth Amendment claims based on a requirement to sleep on the top bunk after the fall should be dismissed because Plaintiff admits that he did not physically return to the top bunk, but slept on the floor. (Doc. 23.) Plaintiff filed a brief in

4

opposition that conceded that Defendant Haldeman should be dismissed as a defendant for lack of personal involvement, but challenged the dismissal of the post-fall Eighth Amendment claims.  (Docs. 26, 26-1.)  On December 27, 2024, the court entered an order granting Defendants' motion for partial dismissal and dismissing all claims against Defendant Haldeman with prejudice, dismissing the Eighth Amendment failure to protect claim concerning the top bunk status in cell 118 after the November 8, 2021 fall with prejudice, and dismissing all claims for monetary relief under the Pennsylvania Constitution with prejudice.  (Doc. 31.)

The remaining Defendants then filed an answer to the amended complaint on January 28, 2025.  (Doc. 34.)  Following discovery, Defendants filed a motion for summary judgment on August 1, 2025 along with a statement of facts and a brief in support.  (Docs. 49, 50, 51.)  Plaintiff did not timely file a brief in opposition to the motion for summary judgment, and, on August 28, 2025, the court entered an order granting Plaintiff until September 19, 2025 to file a brief in opposition or the motion would be considered unopposed.  (Doc. 52.)  On October 1, 2025, the court received and docketed a request for an extension of time to file a brief in opposition from Plaintiff.  (Doc. 53.)  The court granted this extension and ordered the brief in opposition due by January 26, 2026.  (Doc. 54.)  To date, the court has not received any brief in opposition from Plaintiff.

## DISCUSSION

### A. Under the Rules of This Court Defendant's Motion Is Deemed Unopposed.

Under the Local Rules of this court, Plaintiff is deemed to not oppose the motion for summary judgment since he has failed to timely oppose the motion or otherwise litigate this case. This procedural default completely frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the rules of this court Plaintiff's failure to respond warrants dismissal of the action. Local Rule 7.6 imposes an affirmative duty on Plaintiff to respond to motions:

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion.* Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is well settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.'" *Williams v. Lebanon Farms Disposal, Inc.*, No. 09-1704, 2010 WL 3703808, at *1 (M.D. Pa.

6

Aug. 26, 2010) (quoting *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991)) (internal quotations omitted).  In this case, Plaintiff has not complied with the Local Rules, or this court's order, by filing a timely response to Defendants' motion.  Therefore, these procedural defaults by Plaintiff compel the court to consider the following:

> [A] basic truth: we must remain mindful of the fact that the Federal Rules are meant to be applied in such a way as to promote justice. *See*, Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion . . ."

*Lease v. Fishel*, 712 F. Supp. 2d 359, 371 (M.D. Pa. 2010) (quoting *McCurdy v. American Bd. Of Plastic Surgery*, 157 F.3d 191, 197 (3d Cir.1998)).

In this case, Plaintiff has failed to comply with Local Rule 7.6 by not filing a timely response to Defendant's motion.  This failure compels the court to apply the sanction called for under Local Rule 7.6, deeming the motion to be unopposed. Under Local Rule 56.1, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."  Therefore, the court deems the motion unopposed and the facts set forth by Defendants are admitted.

**B. Defendants' Motion for Summary Judgment Will Be Granted**

Defendants seek summary judgment in this action because they relied on the information contained in SCI-Rockview's computerized database when assigning Plaintiff to the top bunk and were unaware of any active physician's order to place Plaintiff on the bottom bunk.  (Doc. 51.)  The facts supporting this argument are admitted.

**1.  Summary Judgment Standard**

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary."  *Id.*  "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case."  *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288

(3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).  The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249.  Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial.  Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "The mere existence of a scintilla of evidence in support

of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### 2.  Admitted Material Facts

Defendants are non-medical staff at SCI-Rockview.  (Doc. 50.)  When a doctor orders an inmate to bottom bunk status, it is reflected in the prisoner's "CAPTOR" computer system.  (*Id.*)  When assigning inmates to bunks, the non-medical staff at SCI-Rockview rely on information stored in CAPTOR.  (*Id.*)  Between November 5, 2021 and November 8, 2021, CAPTOR did not show any indication that Plaintiff was to be assigned to a bottom bunk only.  (*Id.*)  Defendants relied on this information in assigning Plaintiff to a top bunk.  (*Id.*)  In support of these facts, Defendants submitted a declaration from Defendant Bollinger.  (Doc. 50-1.)

### 3.  Defendants Met Their Burden

Prison officials violate the Eighth Amendment when they act with deliberate indifference to a prisoner's serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).  To sustain a constitutional claim under the Eighth Amendment for inadequate medical treatment, a plaintiff must make (1) an objective showing

that his medical needs were serious, and (2) a subjective showing that the defendants were deliberately indifferent to those medical needs.  *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987) (citation omitted).  A prison official is deliberately indifferent when he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The Third Circuit has held that non-medical prison officials are generally justified in relaying upon the expertise and care of prison medical providers. *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir.  2004).  If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed.  *Id*.; *see also Bowman v. Mazur*, 435 Fed. Appx. 82 (3d. Cir. 2011).

Here, Defendants have presented evidence that they, as non-medical officials, relied upon the computer system used to communicate with medical professionals regarding an inmates' housing location for medical purposes when placing Plaintiff in a top bunk prior to his fall on November 8, 2021.  (Docs. 50, 50-1, 51.)  Plaintiff has not opposed the motion in any way, nor submitted any

11

evidence that contradicts Defendants or establishes any actual knowledge on the part of Defendants that was contradictory to the guidance of medical professionals. Therefore, the court will grant Defendants' motion for summary judgment.

## CONCLUSION

For the above stated reasons, the court will grant Defendants' motion for summary judgment, enter judgment in Defendants' favor, and close the case.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: March 9, 2026